CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 30 2014

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONNA J. HOCKMAN,<br>　　Petitioner, | ) <br>) <br>) | Civil Action No. 7:13-cv-00240 |
| v. | ) <br>) | **MEMORANDUM OPINION** |
| PHYLLIS BASKERVILLE,<br>　　Respondent. | ) <br>) <br>) | By:　Hon. Michael F. Urbanski<br>　　　United States District Judge |

Donna J. Hockman, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging her convictions entered by the Circuit Court of Rockingham County. Respondent filed a motion to dismiss, and Petitioner responded, making the matter ripe for disposition. After reviewing the record, the court grants Respondent's motion to dismiss because Petitioner procedurally defaulted all but two of the instant 240 habeas claims and the two remaining claims do not entitle her to relief.

I.

A jury found Petitioner guilty of first-degree murder and using a firearm in the commission of murder for fatally shooting her boyfriend, despite her arguments that she acted in self defense and defense of her son. The Circuit Court followed the jury's sentencing recommendation and sentenced petitioner to life imprisonment plus three years.

On direct appeal to the Court of Appeals of Virginia, Petitioner argued that the evidence was insufficient to sustain her convictions; the trial court erred in denying a pretrial motion for a continuance; and the trial court erred by admitting evidence from a witness about a wager for sexual favors between Petitioner and the victim. The Court of Appeals of Virginia considered and denied the merits of these claims, and the Supreme Court of Virginia rejected the appeal consisting of the same claims.

Petitioner subsequently filed a 236-claim state habeas petition pro se with the Circuit Court, which dismissed the petition on January 6, 2012, via a one-page order. Because the order did not identify the substance of the claims or contain findings of facts, conclusions of law, or specific reasons for the denial of each claim as required by Virginia Code § 8.01-654(B)(5), the Circuit Court entered a new order on January 18, 2012, that vacated the one-page dismissal order. That same day, the Circuit Court also entered a second, thirty-nine page order that dismissed the petition because the claims were procedurally defaulted or meritless.

Petitioner's subsequent petition for appeal to the Supreme Court of Virginia listed seven enumerated claims, each describing how the Circuit Court erred in only the habeas proceeding. The seven enumerated claims were preceded by the unenumerated foreword, "[Petitioner] reincorporates all previous claims listed in the original Habeas and Supplement to the Habeas Petition, as error." The Supreme Court of Virginia refused the appeal, noting, "Upon review of the record in this case and consideration of the argument submitted in support of granting the appeal, the Court is of opinion there is no reversible error in the judgment complained of." Hockman v. Hobbs, No. 120567, slip op. at 1 (Va. Nov. 15, 2012). Petitioner argued in a petition for rehearing that the Circuit Court erred by initially issuing the simple, one-page denial of her 232-claim habeas petition. The Supreme Court of Virginia denied the petition for rehearing, and the Supreme Court of the United States declined to issue a writ of certiorari.

## II.
### A.

A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted [. . .] state remedies by presenting [the] claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). An exhausted claim

2

is one that is fairly presented to the state's highest court, meaning that the essential legal theories and factual allegations advanced in federal court are the same as those presented to the highest state court. Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (citing Picard v. Connor, 404 U. S. 270, 275-76 (1971)).

Petitioner argued to the Supreme Court of Virginia on direct appeal that the evidence was insufficient to sustain her convictions and that the Circuit Court's denial of a pretrial motion for a continuance was error. Consequently, these two instant habeas claims are exhausted. However, Petitioner did not present any other instant habeas claim to the Supreme Court of Virginia via direct appeal.

In the appeal to the Supreme Court of Virginia from the habeas proceeding, Petitioner presented seven enumerated claims after writing her foreword, "[Petitioner] reincorporates all previous claims listed in the original Habeas and Supplement to the Habeas Petition, as error."[1] Per Virginia law, the Supreme Court of Virginia considers only those errors presented in assignments of error. See Va. Sup. Ct. R. 5:17(c)(1)(i)-(iii); Yeatts v. Murray, 249 Va. 285, 290-91, 455 S.E.2d 18, 21 (1995). An assignment of error must "list, clearly and concisely and without extraneous argument, the specific errors in the rulings below upon which the party intends to rely." Va. Sup. Ct. R. 5:17(c)(1). Furthermore, the assignments of error must "address the findings or rulings in the trial court or other tribunal from which an appeal is taken," and an assignment of error that "merely states that the judgment . . . is contrary to the law and the evidence[] is not sufficient." Va. Sup. Ct. R. 5:17(c)(1)(iii).

---

[1] The seven claims were that the Circuit Court judge erred by: 1) not accepting Petitioner's exhibits to the habeas petition; 2) not considering the exhibits; 3) not allowing Petitioner twenty-one days to respond to the respondent's motion to dismiss; 4) not explaining the bases of the first dismissal order; 5) issuing the second dismissal order after the Attorney General requested a written explanation; 6) not recusing himself; and 7) not granting Petitioner's request for an evidentiary hearing. These seven claims do not warrant federal habeas relief because they represent an attack only on the collateral proceeding and not Petitioner's detention, even if some error in state post-conviction proceedings occurred. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (affirming that claims of error in a state post-conviction proceeding cannot serve as a basis for federal habeas relief).

3

In accordance with Virginia law, the foreword was not sufficient to present "all previous [habeas] claims" to the Supreme Court of Virginia. Petitioner's foreword was not an assignment of error because it was not clear or concise and did not allege specific errors in the Circuit Court's order that dismissed the habeas petition, and Virginia law prohibits incorporating arguments made to an inferior court into a petition for appeal by a mere reference. Va. Sup. Ct. R. 5:26(g); Lenz v. Warden, 265 Va. 373, 376-77, 579 S.E.2d 194, 196 (2003), rev'd on other grounds, 267 Va. 318, 593 S.E.2d 292 (2004). Consequently, the Supreme Court of Virginia would not review "all previous [habeas] claims listed" in the petition filed with the Circuit Court. See Va. Sup. Ct. R. 5:17(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court."). After the Supreme Court of Virginia denied her habeas appeal, Petitioner referenced the aggregate 232 state habeas claims in a petition for rehearing, but such a simple reference in a petition for rehearing does not fairly present each claim to the Supreme Court of Virginia. Hedrick v. True, 443 F.3d 342, 365 n.1 (4th Cir. 2006). Furthermore, the court "will not go further and determine whether the Virginia Supreme Court should have seen another claim in h[er] filings." Mallory v. Smith, 27 F.3d 991, 996 (4th Cir. 1994). Therefore, Petitioner failed to present "all previous [habeas] claims" to the Supreme Court of Virginia, and she may not now raise them on federal habeas review.[2] See Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir. 1986) ("[F]ailure to appeal claims disposed of by a state habeas trial court

---

[2] The court will treat the unexhausted claims, including the alleged "newly-discovered" claims, as technically exhausted because Petitioner would be procedurally barred under state law from now presenting them to the Supreme Court of Virginia. See VA. CODE § 8.01-654(A)(2), (B)(2) (barring the claims under the statute of limitations and the rule against successive petitions for claims based on any facts of which a petitioner had knowledge when filing a previous petition). Petitioner fails to establish that the alleged "newly-discovered" evidence, which consists of jury verdict forms, the Commonwealth's witnesses' propensity to lie, the jury instructions, and Commonwealth witness John Metzler's guilty plea negotiations, were unknown before she filed the state habeas petition. Accordingly, the court will not stay these proceedings to allow Petitioner to present the omitted claims to the Supreme Court of Virginia. See, e.g., Rhines v. Weber, 544 U.S. 269, 273 (2005) (describing a mixed petition as a petition containing both exhausted and unexhausted claims and recognizing a district court has discretion to stay a mixed petition).

4

constitutes a procedural bar to further federal review of such claims."). Accordingly, the court must treat the unexhausted claims as procedurally defaulted.[3]

**B.**

Petitioner procedurally defaulted all but two of the instant claims: 1) the evidence was insufficient to sustain her conviction for first-degree murder, and 2) the Circuit Court's denial of a pretrial motion for a continuance was error. The court may not review the procedurally defaulted claims absent a showing of a fundamental miscarriage of justice or cause and prejudice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 753-54 (1991). Cause constitutes a novel claim, a factor external to the defense that impeded compliance with the state procedural rule, or an error by counsel.[4] Id. A court does not need to consider the issue of prejudice in the absence of cause. Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

As an attempt to describe cause, Petitioner alleges that she did not receive the Circuit Court's January 18, 2012, dismissal order that thoroughly reviewed and dismissed all the state habeas claims. Pet'r's Resp. ¶ 1. Instead, Petitioner explains she only received the one-page, January 6, 2012, generic dismissal order and the January 18, 2012, order vacating the January 6,

---

[3] Besides procedurally defaulting the claims as unexhausted, the Circuit Court dismissed multiple claims pursuant to Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), holding that Petitioner procedurally defaulted all non-jurisdictional issues that could have been presented at trial and on appeal but were not. See Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (recognizing that a procedural default pursuant to Slayton constitutes an adequate and independent state law ground for decision).

[4] Counsel's error may serve as cause if a petitioner demonstrates (1) that the error was so egregious that it violated petitioner's constitutional right to effective assistance of counsel, and (2) that the ineffective assistance claim itself is exhausted and not procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). However, all of Petitioner's ineffective assistance of counsel claims are procedurally defaulted due to her failure to present them to the Supreme Court of Virginia. Nonetheless, the Court in Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012), held that a procedural default may not bar a federal habeas court from considering a "substantial" ineffective assistance of trial counsel claim if a petitioner did not have counsel in the initial review proceeding or if counsel in that proceeding was ineffective. See Martinez, 132 S. Ct. at 1316, 1318 (noting that a petitioner must show that the underlying ineffective assistance claim used to excuse a procedural default must be "substantial" by having "some merit"). However, Petitioner defaulted her claims on appeal, not during the initial review proceeding, and thus, Martinez does not apply. See id. at 1316 (recognizing the remedy created by Martinez is not applicable when the trial court reviews a claim during the initial-review habeas proceeding). Accordingly, none of Petitioner's ineffective assistance of counsel claims can serve as cause to excuse the procedural default of most of the instant habeas claims.

2012, order. Id. Thus, Petitioner argues that she could not have appealed the Circuit Court's reasons for dismissal if she never received the January 18, 2012, dismissal order that thoroughly reviewed and dismissed all the state habeas claims.

The court is not persuaded by Petitioner's argument. The fifth assignment of error in her pro se petition for appeal to the Supreme Court of Virginia reads, "The [Circuit] court erred by vacating the original Order of denial entered on January 6th, 2012, and re-entered a new Order of denial on January 18, 2012, at the request of the [Respondent], based on [the judge's] failure to provide reasons of denial with the original motion in accordance with [a] Virginia statute." Pet'r's Pet. for Appeal to Va. Sup. Ct. 3 (Dkt. no. 32-1 at 7) (emphasis added). A review of the Circuit Court's record reveals two orders were entered on January 18, 2012. The first order, captioned, "Order," is one page and reads in pertinent part, "It appearing to the Court that the Final Order entered in this habeas corpus case on January 6, 2012, should be vacated, it is therefore, ADJUDGED and ORDERED that the Final Order be, and is hereby, VACATED. The matter shall be retained on the docket of this Court pending further action." The second order, captioned, "Findings of Facts, Conclusions of Law, and Reasons for Decision," is thirty-nine pages and concludes with, "It is, therefore, ADJUDGED and ORDERED that the petition for a writ of habeas corpus be, and is hereby, denied and dismissed."

As evidenced by the fifth assignment of error, Petitioner knew the existence of the "Order of denial" issued on January 18, 2012, when she executed the petition for appeal on March 30, 2012. Furthermore, that "Order of denial" could not reasonably mean the one-page order vacating the prior dismissal order and could only mean the thirty-nine page Order that "denied and dismissed" the habeas petition. Petitioner's pro se pleadings and motions in state and federal court exhibit her ability to understand the difference between an order dismissing her state

habeas petition and an order vacating that dismissal order. Moreover, if the one-page Order vacating the dismissal of the habeas petition was the only order she received, there would be nothing for her to appeal as that Order "retained [the case] on the docket of th[e] [Circuit] Court pending further action." By filing the appeal, it is clear that Petitioner knew full well that her state habeas petition had been denied, and it is absurd for her to now suggest otherwise.

Petitioner also fails to establish a fundamental miscarriage of justice to excuse the procedural default. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new [and reliable] evidence [not presented at trial], it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006). None of Petitioner's alleged "new" evidence, even if reliable and actually "newly discovered," would change the minds of reasonable jurors. See infra Part III.A. Accordingly, all but two of the instant claims are dismissed as procedurally defaulted.

## III.

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."[5] 28 U.S.C. § 2254(a). After a state court addresses the merits of a claim also raised in a federal habeas petition, a federal court may not grant the petition unless the state court's adjudication of a claim is contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

---

[5] Some of Petitioner's defaulted claims do not have any bearing on the legality of her confinement, including whether the Circuit Court unlawfully prevented Petitioner's mother from receiving information via the Freedom of Information Act. Such claims are also dismissed because they are not cognizable in federal habeas proceedings.

7

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.

A federal court may also issue the writ under the "unreasonable application" clause if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. This reasonableness standard is an objective one. Id. at 410. A Virginia court's findings cannot be deemed unreasonable merely because it does not cite established United States Supreme Court precedent on an issue if the result reached is not contrary to that established precedent. Mitchell v. Esparza, 540 U.S. 12, 16 (2003). Furthermore, "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, ___, 130 S. Ct. 841, 849 (2010).

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).

## A.

Petitioner argued to the Supreme Court of Virginia via direct appeal that the evidence was insufficient to sustain her convictions. In the instant petition, Petitioner argues that the evidence was insufficient to sustain her conviction for first-degree murder. Accordingly, Petitioner exhausted her instant claim that the evidence was insufficient to sustain her conviction for first-degree murder.

The Court of Appeals of Virginia held that the evidence was sufficient to convict Petitioner of first-degree murder after viewing the evidence in the light most favorable to the Commonwealth.[6] See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that a federal court can rely on a reasoned state court judgment when later unexplained state court orders uphold that judgment); Washington v. Commonwealth, 273 Va. 619, 643 S.E.2d 485, 487 (2007) (recognizing that the Due Process Clause of the Fourteenth Amendment requires all criminal convictions in Virginia to be based on sufficient evidence); see also Jones v. Murray, 947 F.2d 1106, 1110 (4th Cir. 1991) (stating written findings of historical fact by the state court are presumed to be correct and entitled to deference unless shown to be erroneous). A state court conviction will not be disturbed if the federal habeas court determines that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" after viewing the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443

---

[6] Virginia Code § 18.2-32 [First and second degree murder defined; punishment] states:
    Murder, other than capital murder, by . . . any willful, deliberate, and premeditated killing, . . . except as provided in § 18.2-31 [Capital murder], is murder of the first degree, punishable as a Class 2 felony.
The Supreme of Virginia defines malice as:
    [T]he intentional doing of a wrongful act without legal justification or excuse, or as the result of ill will. Malice and the specific intent to maim, etc., may be evidenced by words or inferred from acts and conduct under the rule that a person is presumed to have intended the natural and probable consequences of his voluntary act.
Fletcher v. Commonwealth, 209 Va. 636, 640, 166 S.E.2d 269, 272 (1969) (citing Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947)).

U.S. 307, 318-19 (1979) (original emphasis). The court has reviewed the trial record, which the Court of Appeals of Virginia aptly summarized as follows:

> [P]rior to July 25, 2008, [Petitioner] and Dustin Stanley, the victim, had a romantic relationship. [Petitioner] referred to the twenty-three-year-old Stanley as her "boy toy." [Petitioner] helped Stanley pay his child support obligation, gave him a cell phone, and gave him a vehicle to use. [Petitioner] testified Stanley physically abused her, and she testified to specific incidents of abuse. [Petitioner] testified she failed to report certain incidents of abuse to the police because she believed Stanley was a confidential informant for the police department and the police would not help her. [Petitioner] testified Stanley also threatened her. On May 5, 2008, [Petitioner] told Kelly Davis, Stanley's cousin, that she thought about killing Stanley. On the days prior to the shooting, [Petitioner] called and sent text messages numerous times to Stanley. [Petitioner] called Stanley's brother on more than one occasion and asked if Stanley was with other women. Additional witnesses testified [Petitioner] spoke to them about Stanley cheating on her. On July 23, 2008, [Petitioner] talked to Stanley's mother about returning Stanley's belongings that were at her residence.
>
> On July 24, 2008, during a conversation about Stanley cheating on her, [Petitioner] told Krystal Heister, Stanley's friend, that she was just going to kill Stanley. On July 24, 2008, [Petitioner] purchased a .380 caliber firearm using the name of Donna Reedy and she gave her prior address in Quicksburg, Virginia. When she purchased the firearm, [Petitioner] stated she needed it for protection. [Petitioner] purchased hollow point bullets after learning that hollow point bullets were designed to create more damage to a body. That same day, [Petitioner] called John Metzler and asked about an indoor shooting range. [Petitioner] told Metzler, "[I]t's either me or him." Later that day, Brandon Harter showed [Petitioner] how to use the firearm. [Petitioner] testified that on the morning of July 25, 2008, Stanley awoke, screamed at her, attacked her, held a knife to her throat, and threatened to kill her. [Petitioner] testified she grabbed the loaded firearm from the trunk of her car, headed to the house, and everything went black.
>
> Kristoffer George, [Petitioner]'s eighteen-year-old son, lived with [Petitioner]. George testified he awoke to gunshots and went downstairs. George saw Stanley alive and leaning against the master bedroom wall. [Petitioner] was a few feet away with a firearm in her hand. Stanley sustained five gunshot wounds to his back, and he died a few minutes later. George saw no injuries on [Petitioner], and he saw no knife in Stanley's hand. There was a pocketknife in the closed position in Stanley's pants pocket. George helped [Petitioner] move Stanley's body and clean the crime scene. George testified that he never saw Stanley hit [Petitioner] but that he did see Stanley and [Petitioner] push each other.
>
> At approximately 11:30 a.m., shortly after the shooting, [Petitioner] met Metzler at an auto repair shop to discuss car repairs and renting a vehicle. Metzler noticed

10

> that [Petitioner] was neither nervous nor upset, and he saw no physical injuries. During their meeting, [Petitioner] told Metzler she had shot Stanley and tried to get suggestions from Metzler regarding moving the body. Metzler contacted the police, and Captain Witting went to [Petitioner]'s residence. Witting found Stanley's body in the back of [Petitioner]'s car. Investigator Spitler saw no injuries on [Petitioner]. Dr. Benson testified that Stanley sustained blunt force injuries prior to his death. Dr. Benson also described the gunshot wounds and the trajectory of the bullets. While awaiting her trial, [Petitioner] spoke to inmates in the jail about the shooting and two inmates testified as what [Petitioner] told them, which differed from [Petitioner]'s testimony.
>
> * * *
>
> The jury was instructed on first-degree murder, second-degree murder, voluntary manslaughter, self-defense, defense of another, malice, and heat of passion. [Petitioner] admitted she shot Stanley. . . . The jury necessarily rejected [Petitioner]'s claim that she was defending either her son or herself when she shot Stanley [by] determin[ing] that [Petitioner] acted with premeditation and malice when she shot Stanley.

Hockman v. Commonwealth, No. 0833-09-3, slip op. at 1-3, 4 (Va. Ct. App. Oct. 22, 2009); see Day 1 Tr. 160, 162, 166, 175-77, 185-88, 199-211, 217-37, 243-46, 249-50, 274, 279-99; Day 2 Tr. 38, 47, 68-71, 184-86, 192-94, 203-05; Day 3 Tr. 10-17, 25, 27-28, 36-41, 47, 54-57, 61, 64, 70-74, 93-96, 102, 105, 109, 125, 128-33, 151-56, 160-77, 183-87, 192-98, 203-11, 216-17, 219-20, 225, 295-97, 299-300, 302-03, 335-45, 359; Day 4 Tr. 15-20, 22-26, 29-33, 40, 53, 63-65, 110, 120, 169, 172-74, 182, 199.

After reviewing the trial transcript and evidence in the light most favorable to the Commonwealth, the court finds that any rational trier of fact could have found beyond a reasonable doubt that Petitioner maliciously and with premeditation murdered the victim. See Perricllia v. Commonwealth, 229 Va. 85, 91, 326 S.E.2d 679, 683 (1985) (holding malice can be inferred from the deliberate use of a deadly weapon); Dawkins, 186 Va. at 61, 41 S.E.2d at 503 (stating whether a defendant acted maliciously is a question of fact). The Commonwealth's evidence established that Petitioner talked to people about killing the victim before the murder, used an old address and a starter check to purchase the firearm, purchased hollow-point bullets,

and admitted to fatally shooting the victim five times. Furthermore, Petitioner's son refuted Petitioner's testimony about how the victim brandished a knife just before the shooting, the jury discounted Petitioner's claims of abuse, self defense, and defense of her son, and the court does not re-determine the credibility of witnesses. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Accordingly, Petitioner fails to establish that the evidence was insufficient to sustain the conviction for first-degree murder, and this claim is dismissed.

### B.

Petitioner also argued via direct appeal that the Circuit Court abused its discretion and prejudiced Petitioner by denying a pretrial motion for a continuance. The Court of Appeals of Virginia held that the Circuit Court did not abuse its discretion by denying the request. Hockman, No. 0833-09-3 at 5.

To succeed on this claim on federal review, Petitioner must establish that the Circuit Court abused its discretion by denying the continuance motion, Ungar v. Sarafite, 376 U.S. 575, 588-89 (1986), and that the erroneous ruling prejudiced the defense, United States v. Cronic, 466 U.S. 648, 660-61 (1984). See United States v. Larouche, 896 F.2d 815, 823 (4th Cir. 1990) (recognizing that a defendant is not deprived of a fair trial if a wrongful denial of a continuance did not prejudice the defense's ability to prepare for trial). "Abuse of discretion" is defined in these circumstances as "unreasoning and arbitrary insistence on expeditiousness in the face of a justifiable request for delay[.]" Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (internal quotation marks omitted).

The adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. Petitioner was indicted on September 15, 2008, and by the next day, Petitioner's trial was scheduled to

begin on January 26, 2009. Petitioner was granted co-counsel and an investigator on October 21, 2008, but the co-counsel filed a motion to withdraw on December 23, 2008, after discovery revealed the Commonwealth would call one of co-counsel's clients as a witness. On January 8, 2009, the Circuit Court granted the motion to withdraw and denied Petitioner's motion for a continuance. The Circuit Court noted that "[a]ll the preliminary work has to have been done by now if it was ever going to be done." (Jan. 8, 2009, Hr'g Tr. 16.) The Circuit Court also noted that counsel was experienced with week-long murder trials, had been removed from additional criminal defense appointments, and had a court-approved investigator available to research the case. Furthermore, the parties recognized that more than seventy subpoenas had already issued for the original trial date and that the Commonwealth's experts would be difficult to reschedule. Moreover, the court immediately appointed new co-counsel after granting the motion to withdraw, even though Petitioner was not statutorily entitled to co-counsel. Cf. VA. CODE § 19.2-163.7 (requiring a trial court to appoint two counsel for a defendant charged with capital murder, if requested). Accordingly, the Circuit Court did not abuse its discretion, Petitioner was not prejudiced by the denial of the continuance, and this claim is dismissed.

## IV.

For the foregoing reasons, the court denies Petitioner's motion to stay, grants Respondent's motion to dismiss, and denies all pending motions as moot. Based upon the court's finding that Petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

ENTER: This 30th day of January, 2014.

/s/ Michael F. Urbanski
United States District Judge